Burke, J.
On the night of March 27, 1965, three butchers were shot to death in the Spring Valley Meat Market in Brooklyn. At about 1:00 a.m. on March 28, the bodies of the three victims were found in a walk-in refrigerator in the rear of the market. During the course of the police investigation which followed the discovery of the bodies, one Carl Gilbert, an employee of the meat market, told the police that defendant Kazle Anthony had been a coemployee and that, about a month earlier, Anthony had fired a practice shot from a gun in the rear yard of the market and that he, Gilbert, had heard something fall to the ground immediately after the shot was fired.
Upon initial questioning by the police, Anthony admitted ownership of a .32 caliber gun and that he had attempted to buy ammunition for it. He also admitted having fired the shot about which Gilbert had told the police. Anthony subsequently told the police that he had thrown the gun away, but later changed his statement and said that he had sold the gun for $35 to an unknown man on March 27, the night of the murders.
Ballistics testing of the slugs taken from the bodies of the victims indicated that they had been fired from the same gun and a spent shell which was found in the rear yard of the meat market was fired from the same gun as other shells found at the scene of the shootings. These facts led the police to believe that the murders had been committed with the gun which Anthony had admitted firing in the presence of Gilbert. Anthony was taken into custody at 4:00 p.m. on March 31 and was interrogated until about 4:00 a.m. the next morning. At that time, Anthony made a statement in which he admitted that he had murdered the three men in the meat market by leading them into the refrigerator at the end of their business day and then shooting each of them twice in the head. The questioning continued until about 9:00 a.m. that morning, at which time Anthony implicated defendant Reginald Batten in the planning and commission of the crime. Anthony’s statement was steno- *701 graphically transcribed at the District Attorney’s office about an hour later.
Defendant Batten was questioned in the police precinct at about 7:00 a.m. on April 1 and stated that he knew Anthony and had seen him on the afternoon of the day on which the murders took place but that he did not see Anthony again until the night after the murder. A short time later, Batten stated that he had seen Anthony on the night of the murder and that, while sharing a bottle of Southern Comfort, Anthony stated that “ they ” were “ going to pull a job ” at the meat market. Batten stated that he told them (Anthony and his brother) that they were ‘ ‘ fools ’ ’ and that he wanted no part of it and left. He then stated that he next saw Anthony at about 1:00 a.m. on March 28 at which time Anthony gave him money to hold for him. Batten told the police where the money was and that he ‘ ‘ figured ’ ’ that it had come from the meat market.
Both defendants challenged the voluntariness of their statements to the police and the assistant district attorney and a Huntley hearing was held at which the police officers, an assistant district attorney and the defendants themselves testified. The usual issues of physical mistreatment, abuse and coercion were controverted by the testimony. At the conclusion of the hearing, the court held that the statements had been made voluntarily and specifically found that the prosecution’s testimony was “ trustworthy, creditable and believable ” and that the testimony offered by the defendants was “ unbelievable and a fabrication concocted to meet the pending issues ’ ’.
The defendants were tried jointly and substantially the same evidence as was introduced at the Huntley hearing was introduced at the trial except that defendant Anthony did not take the stand. At the conclusion of the trial the court charged the jury on voluntariness and also charged that, if the jury found that the statements were involuntary, both of the defendants must be acquitted. The jury returned verdicts against both of the defendants finding them guilty of murder in the first degree and each has been sentenced to life imprisonment.
Initially, defendant Anthony contends that his confession was inadmissible since, according to Anthony, the ‘6 undisputed facts ” establish that it was involuntary. The voluntariness of a statement is, however, essentially a factual matter and the *702 findings of the court at the Huntley hearing and of the trial jury, when affirmed by the Appellate Division, cannot be disturbed on appeal unless they can be characterized as incredible as a matter of law or unless the inferences drawn from conflicting testimony are not supported by sufficient evidence in the record (People v. Baker, 23 N Y 2d 307, 319; People v. Boone, 22 N Y 2d 476, 483). The record in this case contains sufficient evidence upon which to predicate the conclusion that the statements were voluntarily made by Anthony and there is, therefore, no merit to Anthony’s contentions to the contrary.
Anthony also contends that he was prejudiced by virtue of his being tried jointly with Batten because of the fact that Batten made statements which tended to implicate Anthony in the planning and commission of the crimes charged. This contention is premised upon the decision of the United States Supreme Court in Bruton v. United States (391 U. S. 123) in which it was held that it is a denial of a defendant’s Sixth Amendment right of confrontation to admit, at a joint trial, the incriminating extrajudicial statements of a codefendant, even though such statements are admitted with instructions to the jury that they are to be considered only as against the defendant who had made them. The crucial feature of the case was obviously the inability of the implicated defendant to cross-examine his codefendant as to the content of the statement since the codefendant did not take the stand and testify at the trial. In the present case, codefendant Batten, whose statements tended to implicate Anthony in the planning of the crime, did take the stand and testify as to the contents of the statements he had made and the circumstances.,-of their making and he was cross-examined by the prosecution. Anthony’s counsel chose not to cross-examine and Anthony noAV contends that this right to cross-examine was an illusory right -since any attempt to cross-examine Batten would merely have served to emphasize to the jury the damaging features of Batten’s statements implicating Anthony. It is clear, however, that Bruton was directed at extrajudicial statements not subject to cross-examination by the defendant who is implicated by them and the evil sought to he obviated by Bruton is not present where the codefendant who made the statement takes the stand and thereby provides the defendant with the opportunity to exercise his Sixth Amend *703 ment right to confrontation. Accordingly, we find no merit in Anthony’s Bruton claim.
Anthony also contends that the trial court committed prejudicial error in allowing only 30 peremptory challenges in the selection of the jury since this was an “ extraordinary ” case in which the court should have ruled that the inclusion of three felony murders in one indictment produced such an unusual situation that a fair trial required more than 30 peremptory challenges. The statute, however, provides for only 20 peremptory challenges where the crime charged is punishable by life imprisonment (Code Grim. Pro. § 373; see, also, People v. Doran, 246 N. T. 409). Indeed, the court allowed the defendants 10 more challenges than the statute provided and it is difficult to see how the defendants were prejudiced by the fact that the trial court allowed them more challenges than the statute provided for. There is also a contention that the trial court, in its charge, overemphasized the issue of physical violence and unfairly summarized the evidence for the jury and that the prosecutor, in his summation, injected a false issue as to the ‘ ‘ greatness and veracity ’ ’ of the members of the police department involved in the case. A reading of the court’s charge in light of the trial record as a whole demonstrates that the evidence of both prosecution and defense was fairly and accurately summarized by the court and, furthermore, the jury was clearly instructed, both before and after the court summarized the evidence, that the jury’s recollection of the evidence was controlling and that the summary was intended only to enable the jury to understand the application of the law, as charged, to the facts as testified to at the trial. Furthermore, the prosecutor’s summation reference to the “ greatness and veracity ” of the police witnesses was not the source of a “ false issue ” since credibility was a crucial issue for the jury both as to the voluntariness of the defendants’ statements and as to their truth. In addition, Anthony’s counsel, in his summation, directly challenged the credibility of the police witnesses by resort to a bit of rather pointed doggerel:
“ Detectives to the left of me,
Detectives to the right of me,
Detectives all around me,
Bullying, grilling, prying,
*704 Determined that I shall not deny Theirs not to question why,
Theirs but to have me lie.
Noble detectives ”.
If the issue as to the character and veracity of the police witnesses had a source, it is readily to be found above and any “prejudice” to defendant Anthony in the prosecution’s attempt to offset this doggerel was of defendant’s own making. Since the record fails to disclose any reversible error as to defendant Anthony, the order of the Appellate Division, Second Department, affirming the judgment of conviction as to him should be affirmed.
Defendant Batten, who made a statement which was exculpatory as to him but which tended to substantiate parts of Anthony’s statement, points out that he was unable to cross-examine Anthony, who did not take the stand and whose last statement did not just ‘ ‘ implicate ’ ’ Batten, but rather singled out Batten as the person who suggested the crime in the first instance, who told Anthony to shoot the three men so that there would be no witnesses to the crime and who thereafter “ cut ” the victims with a meat cleaver. Though Batten did also make a “ statement ”, it is clear that Bruton v. United States (supra) mandates a reversal as to him since he was deprived of the precise .Sixth Amendment right to confrontation which Bruton was deprived of when his codefendant Evans’ statement was admitted at their joint trial and Evans did not take the stand. In addition to the fact that Anthony’s statement was admitted, albeit with the usual limiting instructions, the prosecutor, in his summation, told the jury that, even though Anthony’s confession was not binding on Batten as a matter of law, ‘ ‘ the confession of Kazle Anthony is so entwined that you cannot take Batten out of it and destroy the confession.” The prejudice inherent in the admission of Anthony’s statement in the joint trial with Batten is clear under the holding of Bruton and that prejudice was intensified by the prosecutor’s improper summation. This prejudicial error requires that Batten’s conviction be reversed and that he be accorded a new trial free of the prejudicial incidents of his first trial. Accordingly, the judgment of the Appellate Division, Second Department, which *705 affirmed the judgment of conviction as to Batten should be Reversed and a new trial ordered.
Chief Judge Fuño and Judges Soieeppi, Bergan, Breitel and Jasen concur.
In People v. Anthony-. Judgment affirmed.
In People v. Batten: Judgment reversed, etc.