■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD BROWN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Beldock, J.), rendered March 25, 1980, convicting him of criminal sale of a controlled substance in the fifth degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. On January 11, 1979 defendant was arrested by undercover narcotics officers who were conducting a "buy and bust operation". At trial, the prosecution offered the testimony of two undercover narcotics officers. Their testimony was to the effect that one of the undercover officers entered a donut shop in the area of Jamaica Avenue and Sutphin Boulevard and asked "if anybody had anything". Defendant approached the officer and told him that he had "meth" (meaning methadone) but that he would not sell it for fear that the officer was "the man". The officer then left the donut shop and, walking along Sutphin Boulevard, approached Archer Avenue, where he met two persons. Through these two persons the officer again came to meet defendant, who then agreed to sell the officer methadone. The officer followed defendant into a fish store in the vicinity and gave him $15 for a bottle of liquid. The officer then exited the store and removed the hood of his sweatshirt from his head. This was a signal to a backup team of officers and after the undercover officer pointed out defendant, he was arrested. A chemist assigned to the police laboratory testified that he analyzed the liquid in the bottle which the officer had purchased from defendant and found methadone to be present. In summation, defendant's counsel argued that the scenario set out by the prosecution was "incredible" and that the officers had a stake in making defendant's arrest "stick". In response, the prosecutrix stated in summation: "Defense counsel thinks it's incredible testimony for a police officer to go into a donut shop, Hey, got anything? He doesn't think it makes sense for a police undercover officer to approach people on the street and say, Hey, you got anything? This is incredible to Mr. Gross. Keep in mind whether it's incredible to you or not. You heard the testimony. I might remind you that it's uncontroverted testimony."

Defendant's counsel objected at this juncture but his objection was overruled, the court stating that "It's her [the prosecutrix'] opinion. She can ask the jury to draw any inference from it." The prosecutrix then stated "I will say it again, uncontroverted." "It is axiomatic that no allusion may be made to the fact that the defendant has failed to avail himself of his right to testify in his own behalf. (CPL 60.15, subd. 2)" *(People v Cora,* 47 AD2d 739, 739-740). "So far as it was possible to explain or contradict evidence other than by the defendant's taking the stand the argument [in summation] was proper *(People* v. *Leonardo,* 199 N. Y. 432, 446), but, so far as it necessarily called upon the jurymen to disregard and disobey [the above-stated principle], it was improper. (Code of Criminal Procedure, § 393; *Ruloff* v. *People,* 45 N. Y. 213; *People* v. *Rose,* 52 Hun, 33; *People* v. *Ryan,* 120 App. Div. 275; *People* v. *Friedman,* 149 App. Div. 873, 878.)" *(People v Watson,* 216 NY 565, 568-569.) Although a *prompt* clarification of the defendant's constitutional privilege and an admonishment that no inference was to be drawn from his failure to testify would have rendered the statement harmless (see *People v Yore,* 36 AD2d 818), the trial court in this case compounded the prejudice to defendant when it stated, in response to defense counsel's objection, that the prosecutrix could "ask the jury to draw *any* inference from" the fact that the evidence was uncontroverted (emphasis added). Its subsequent instructions that (1) defendant was under no obligation to produce witnesses; and (2) no inference was to be drawn from his failure to testify did not cure the prejudice to defendant (see *People v McLucas,* 15 NY2d 167, 171; cf. *People v Maimone,* 9 AD2d 780, 781, affd 7 NY2d 998, cert den *sub nom. Akel v New York,* 364 US 827; *People v Rolchigo,* 33 AD2d 1060). Accordingly, a new trial is ordered. Weinstein, J. P., Gulotta, Niehoff and Rubin, JJ., concur.