(January 3, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT M. LEWIS, Appellant. — Appeal from a judgment of the County Court of Delaware County (Farley, J.), rendered June 9, 1980, upon a verdict convicting defendant of the crimes of murder in the second degree (one count), manslaughter in the second degree (one count), attempted burglary in the second degree (one count), burglary in the third degree (one count) and grand larceny in the third degree (two counts).

On August 16, 1979, Charlotte Rivenburgh was fatally shot; the bullet was fired from a .32 caliber revolver. At about 6:00 P.M., the victim went for a walk in the area of her home located in the Town of Hancock, Delaware County. Around 7:10 P.M., her husband, concerned over his wife's tardiness, began searching the neighborhood, eventually discovering her lying on the grass of a nearby home, the Di Grande residence; she was not breathing. The Delaware County Medical Examiner, who supervised removal of the body, determined that death was caused by a gunshot wound to the head. The two pathologists who performed the autopsy on the victim concluded that death had occurred between 5:20 P.M. and 8:00 P.M. on August 16, 1979.

Herbert Witzenberger testified for the People that on the day of the shooting, at the direction of Russell Rieman, he drove his van, carrying Russell, his brother Kenny Rieman, and defendant to a wooded area previously unknown to him, and backed

the van into a driveway. Defendant and Kenny then exited the van while Russell and Witzenberger remained inside listening to eight-track tapes. In about 15 minutes, defendant and Kenny returned with a packed pillowcase and "long stuff" wrapped in a blanket. The two left again; by the rearview mirror, Witzenberger saw that defendant was carrying a pistol and Kenny a crowbar. Shortly thereafter, Witzenberger heard a shot. Defendant and Kenny then came running back to the van with one yelling "let's get out of here".

Later that night, at the Riemans' trailer, Witzenberger heard defendant acknowledge that he had made a mistake. The next night, August 17, Russell gave Witzenberger two metal boxes and a pair of binoculars which he threw over a bridge the next day. Highway workers later discovered these items which had been stolen from the premises of Salvatore Tomaiolo, a neighbor of the Rivenburghs; seven guns had also been taken from the Tomaiolo residence. Another neighbor of the Rivenburghs, George Di Grande, testified that on inspecting his home on August 17, 1979, he found a screen door pried open; however there had been no entry.

Albert Hazen, a friend of defendant's, testified that the latter told him of the incident and claimed that he either tripped or slipped on something while running, causing the pistol he was carrying to go off and that he "threw the gun in the van and told Herbie to get the hell out of there." Brian Wormuth, another of defendant's friends, testified that around 7:10 P.M. on August 16, 1979 — the night of the shooting — while at the Riemans' house, he observed defendant leaving the Witzenberger van carrying a blue sheet which he later saw contained four rifles and that defendant said that he "thought he shot at somebody".

Defendant, who testified in his own defense, stated that he watched television all night on August 16, 1979 at the Hazen residence. A medical expert also testified on behalf of defendant that, if the victim had last eaten at noon on the tragic day, as her husband testified, then the time of her death could have been no later than 4:00 P.M. — two hours before the Witzenberger van appeared on the scene.

On appeal, defendant essentially contends that: (1) the disputed evidence relating to the time of the victim's death was not consistent with the hypothesis of defendant's guilt to a moral certainty; (2) the testimony of the accomplice and other witnesses was insufficient to sustain the convictions; (3) he was deprived of effective assistance of counsel; (4) the prosecutor committed reversible error at trial; and (5) the conduct of the Trial Judge deprived defendant of a fair trial.

Assuming, as we can, that the jury credited the People's witnesses (see *People v Kennedy,* 47 NY2d 196, 203), there is ample evidence for the jury's conclusion that the shooting and death occurred after 6:00 P.M. The testimony of Witzenberger and Harold Rivenburgh fixes the time of death at after 6:00 P.M. Furthermore, the People offered proof based on the onset of rigor mortis that the victim was shot between 5:20 P.M. and 7:20 P.M. The jury was thus free to discount the testimony of defendant's pathologist.

Nor do we find corroboration lacking in the testimony given by the accomplice Witzenberger. Not only did defendant's own statements to two individuals uninvolved in the incident (Hazen and Wormuth) incriminate defendant in the shooting itself, but Wormuth places defendant with Witzenberger and the two Riemans in Witzenberger's van and with the stolen property (see *People v Glasper,* 52 NY2d 970, 971).

The charge that defense counsel was ineffective is belied by the record and undeserving of comment.

Although a host of errors are ascribed to the trial court and the prosecutor, we find that those which did indeed occur do not warrant a reversal of the conviction. The errors committed (an improper accomplice charge, failure of the trial court to instruct the jury as to the meaning of taking testimony subject to connection, allowing the People to impeach the autopsy report, forcing defendant to call witnesses liars and the improper bolstering of People's witnesses) did not undermine the compelling testimony of Witzenberger, Hazen and Wormuth.

The trial court neglected to include in its accomplice charge the instruction that the jury should discount the plea of guilty by the accomplice Witzenberger to burglary and attempted burglary charges stemming from the incidents of August 16, 1979. This failure to admonish the jury not to draw any inference of defendant's guilt from the accomplice's plea was error (see *People v O'Neal,* 98 AD2d 906; *People v Barber,* 81 AD2d 943) and, absent overwhelming proof of defendant's guilt, would constitute reversible error (*People v Barber, supra,* p 944). Similarly, during cross-examination, defendant, in order to justify his own testimony, was forced to call the People's witnesses liars, thus also necessitating reversal if there were not overwhelming evidence of his guilt.

But the record here demonstrates such guilt. The People's proof: (1) positions defendant at the scene of the crime, and at the time it was being perpetrated, with a revolver; (2) establishes the victim's cause of death by a bullet to the brain fired from a revolver; (3) reveals that immediately after the crime and

while in the company of the alleged participants in the crime, defendant had in his possession various items stolen from the Tomaiolo residence; and (4) includes defendant's own admissions to two individuals unconnected with the crimes that defendant shot someone on the date the victim was in fact killed.

Under the circumstances of this case, we find that the trial court's failure to rule on evidence received subject to connection and its erroneous decision to permit the People to impeach their own autopsy report were harmless. A trial court should rule on evidence taken subject to connection (*People v Mackell,* 47 AD2d 209, 221, affd 40 NY2d 59). Here, however, that evidence was indeed eventually connected and no motion to strike it was interposed.

That the People introduced evidence of a glaring error in the autopsy report is equally inconsequential. The report stated that reactive gliosis was present in the victim. Medical experts for both the People and defendant acknowledged that reactive gliosis requires at least a week to appear, and that it could not possibly have been present in the victim. As a matter of law, then, this error can be disregarded (*People v Garafolo,* 44 AD2d 86, 88).

In general, it is, as defendant maintains, improper for the People to bolster witnesses in summation; however, bolstering does not constitute reversible error where defendant in summation questions the credibility of such witnesses (*People v Blackman,* 88 AD2d 620, 621). Defendant, during summation, implied that the People had coerced and rehearsed key testimony; the prosecutor, in his unobjected-to remarks, fairly met those comments, to which they are to be compared (*id.;* see, also, *People v Anthony,* 24 NY2d 696, 703-704, cert den 396 US 991). Though there were errors in the trial, they were not of sufficient consequence to warrant a new trial (see *People v Crimmins,* 36 NY2d 230).

Judgment affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.