THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
THAXTON HAMLIN, Appellant.

Fourth Department, November 10, 1987

APPEARANCES OF COUNSEL

*Edward J. Nowak (Howard Broder* of counsel), for appellant.

*Howard R. Relin,* District Attorney *(Robert Mastrocola* of counsel), for respondent.

## OPINION OF THE COURT

BOOMER, J.

After a joint trial the jury found defendant, Hamlin, and his codefendants, Green and Brown, guilty of murdering Brown's wife. Defendant Hamlin appeals asserting two principal grounds for reversal: (1) that the court erred in denying his motion for a separate trial and in receiving in evidence the confession of codefendant Green *(see, Bruton v United States,* 391 US 123), and (2) that the court erred in refusing to instruct the jury that if they found defendant's confession to be involuntary, they should disregard the physical evidence discovered by the police as the result of the confession.

I

■ Even though the confessions of defendant, Hamlin, and his codefendant Green were interlocking, it was error to permit the introduction of the confession of codefendant Green *(see, Cruz v New York,* 481 US —, 107 S Ct 1714). This error does not require reversal, however, because we find the error to be harmless *(see, Cruz v New York, supra; Harrington v California,* 395 US 250).

Codefendant Brown confessed that he hired Hamlin and Green to murder his wife so that he could collect $100,000 of insurance on her life. The admission of this confession at the joint trial was not error because Brown testified in his defense and thus was subject to cross-examination *(see, Nelson v O'Neil,* 402 US 622, 627-630; *People v Anthony,* 24 NY2d 696, 702-703). Both Hamlin and Green gave detailed confessions reciting that Brown had promised them $5,000 each to kill Susan Brown, and that they finally visited Susan, whom they both knew, struck her over the head and knifed her repeatedly. In addition to his confession, there was ample evidence to convict Hamlin of the murder. Hamlin's jacket and Green's jacket and pants were spotted with blood of the same type and containing the same enzymes as the victim's blood. A fibre found on Hamlin's jacket matched the victim's sweater, a strand of hair found on his pants matched the victim's hair

and four fibres from Green's pants were found on the victim's pants. Brown, Hamlin and Green were seen at a restaurant having breakfast together a few hours before the murder and a witness testified that Brown received a telephone call from Hamlin shortly before the murder. Hamlin had accompanied Brown a few days before when Brown discussed with a car dealer the purchase of a car that he was going to drive to Florida. Brown told the dealer that he could not pay for the car immediately, but he was expecting to inherit $100,000 soon. Finally, the bloodstained knife which Hamlin said he had used to stab the victim was found by police where Hamlin said he had thrown it.

This "web of circumstantial evidence" together with Hamlin's detailed and graphic confession "presented a picture of guilt so overwhelming that it left no reasonable possibility" that the use of Green's confession at the joint trial contributed to the conviction (see, People v Hopkins, 58 NY2d 1079, 1083).

## II

█ The court did not err in refusing to instruct the jurors, as requested by defendant, that if they found defendant's confession to be involuntary, they should not consider the physical evidence found as a result of the confession. CPL 710.70 (3) provides that a motion to suppress is the exclusive method of challenging the admissibility of evidence upon the grounds specified in CPL 710.20. One of the grounds specified is that the evidence was obtained as the result of other evidence illegally obtained, including a statement involuntarily made. The second paragraph of CPL 710.70 (3) allows a defendant a "second bite" before the jury on the issue of the voluntariness of his statement and provides that the court must instruct the jurors that evidence of a pretrial statement must be disregarded by them if they find that the statement was involuntarily made. This paragraph requires the jury to disregard only the involuntary statement, not evidence obtained as a result of the statement.

The "two bite" provision was enacted following the decision of the Supreme Court in Jackson v Denno (378 US 368) wherein the court struck down New York's procedure of submitting to the jury, and not to a suppression court, questions of fact involving voluntariness of confessions. The Supreme Court held that due process required that a court pass upon the issue of voluntariness of a confession so that the

defendant could have "a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession" *(Jackson v Denno, supra,* at 377). Although *Jackson v Denno* did not require that a defendant have a "second bite" before the jury, our Court of Appeals has held that our State Constitution requires a jury trial on the issue of voluntariness *(People v Huntley,* 15 NY2d 72, 78). Thus, the court adopted the Massachusetts procedure described in *Jackson v Denno (supra,* at 417) under which the "Judge hears all the evidence and rules on voluntariness before allowing confession into evidence; if he finds the confession voluntary, jury is then instructed that it must also find the confession was voluntary before [the jury] may consider it."

Our State Constitution does not require, however, that the issue of admissibility of evidence derived from an involuntary confession be submitted to a jury. Article I, § 2 provides in part, "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever". That guarantee extends to all cases in which there was a right to a jury trial prior to the enactment of the 1894 Constitution *(Cowper Co. v Buffalo Hotel Dev. Venture,* 99 AD2d 19, 21, *appeal dismissed* 68 NY2d 660; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4101.07). Before 1894, a defendant was entitled to have a jury pass upon the issue of voluntariness of a confession, but even if the jury found the confession to be involuntary, it could still consider evidence derived from the confession. The law at that time was that "[t]he rule which excludes evidence of the confessions of persons charged with crimes, where such confessions have been made under the influence of threats or promises, has never been held to exclude evidence of any facts which were ascertained in consequence of such confessions." *(Duffy v People,* 26 NY 588, 590.) This continued to be the law long after the adoption of the 1894 Constitution, and it was not until the advent of the exclusionary rule that evidence derived from an illegally obtained confession became inadmissible *(see, People v Ressler,* 17 NY2d 174, *rearg denied* 17 NY2d 918; *People v Rodriguez,* 11 NY2d 279, 286; *see also, Mapp v Ohio,* 367 US 643, *reh denied* 368 US 871; *Nardone v United States,* 308 US 338). Thus, the State Constitution does not require that the jury pass upon the admissibility of evidence derived from an involuntary confession, nor does the plain language of the statute. The statute is clear and it should be

read and given effect as written by the Legislature *(People v Graham,* 55 NY2d 144, 152).

We consider the other issues raised by defendant to be without merit. Accordingly, the judgment of conviction should be affirmed.

DOERR, J. P., DENMAN, LAWTON and DAVIS, JJ., concur.

Judgment unanimously affirmed.