■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BILLY JOE GREEN, Appellant.—Judgment unanimously affirmed. Memorandum: Defendant was tried jointly with Kurtis Brown and Thaxton Hamlin and the facts of this vicious murder are set forth in the opinions in *People v Hamlin* (131 AD2d 200, *affd* 71 NY2d 750). We conclude that the *Bruton* error was harmless. The proof of defendant's guilt was just as overwhelming as was the proof of Hamlin's guilt and there was no possibility that the jury's assessment of defendant's guilt was

affected by the statements of Brown and Hamlin (see, *People v Hamlin*, 71 NY2d 750, 758-759, *supra*).

We find no merit to defendant's contention that his statement should have been suppressed because he, a minor 17 years of age, was deprived of the assistance of his parents. The evidence at the suppression hearing established as follows: Hamlin told the police that the jacket he was wearing belonged to defendant and that the blood on the jacket came from a cut defendant sustained when he jumped a fence. Police Investigators Jackson and Rotunno went to defendant's home and told his parents that they wanted to verify what Hamlin had said. Defendant's mother asked defendant if he allowed Hamlin to wear his jacket and when defendant answered, "No", she told him to get his jacket. He brought one jacket from upstairs and his mother told him to get the other jacket. The second jacket had blood on it and defendant said the blood came from his thumb, which was cut when he jumped a fence. Jackson asked the parents if defendant would accompany them to police headquarters. They agreed. He also asked defendant to accompany the officers.

Defendant walked with the officers to the police car, opened the car door and got in the back seat. His father followed in his own car. The father did not ask to take defendant in his own car nor did he ask to accompany defendant in the police car. After defendant got into the police car, Rotunno gave him the *Miranda* warnings. Defendant said that he understood them and agreed to waive them and speak to the investigators. Although Hamlin had not confessed to the crime, Jackson told defendant that Hamlin had confessed and that he might as well tell what had happened. Defendant then admitted that he and Hamlin had "jumped" the victim, and that he had hit her with a cane, and that they had both stabbed her, leaving her dead.

When they arrived at the police station, Jackson took defendant into the interview room. Later the father was told what defendant had said in the police car. The father asked to speak to his son and was taken into the interview room. After the father spoke to his son for 10 minutes alone, he told the investigators that they might as well continue with the statement because "we have to get to the bottom of it." Thereafter, defendant gave a signed statement which was consistent with what he had said in the police car. He also led the police to a location near the scene of the murder where they found the bloodstained knife that defendant had used to stab the victim.

At no time did the father ask to speak to or be with his son, except the one time that he was taken to the interview room.

We agree with the suppression court that defendant was not in custody in the police car until after he made his admission to the police. A person in the position of defendant, innocent of any crime, would reasonably have believed that he was free to go before he made his inculpatory statement.

The fact that the police questioned defendant in the absence of his parents does not require suppression of the statement. There is no requirement that the police permit the parents to be present when the child is being questioned *(People v Murphy,* 97 AD2d 873) and there is no per se rule invalidating a confession where the police isolate an infant defendant from his parents during questioning *(People v Taylor,* 16 NY2d 1038, 1039-1040, *affd after remand* 27 NY2d 493).

The fact that the police misrepresented to defendant that Hamlin had admitted the murder does not render defendant's statement involuntary since that misrepresentation did not create "a substantial risk that the defendant might falsely incriminate himself" (CPL 60.45 [2] [b] [i]; *People v Pereira,* 26 NY2d 265, 268-269; *People v Boone,* 22 NY2d 476, 483). (Appeal from judgment of Supreme Court, Monroe County, Bergin, J.—murder, second degree.) Present—Denman, J. P., Boomer, Green, Lawton and Davis, JJ.