■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL ADAMO, Appellant. [765 NYS2d 651] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Blackburne, J.), rendered July 2, 2001, convicting him of burglary in the second degree, possession of burglar's tools, petit larceny, and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The complaining witness testified that he confronted three men after they had intruded into his apartment. He testified that, during the course of this confrontation, he actually recognized the three men, including the defendant, as being among a group of people he had previously seen, on many prior occasions, gathered in a schoolyard behind his apartment.

The complainant reported the incident to police. He described two of the men as wearing black jackets and caps, and one of them as wearing a "grayish jersey." Within minutes after the occurrence, and after a canvass of the area with the police, the complaining witness identified the defendant and two other men. The defendant and one other man were wearing black jackets and baseball caps; the third man was wearing a "gray hooded sweatshirt type of jacket." One of the codefendants was found to be in possession of a screwdriver consistent with the instrument used to break into the apartment. However, the property that was stolen from the complainant's apartment was not recovered.

Contrary to the view expressed by our dissenting colleague, we regard the evidence of guilt in this case as overwhelming. The evidence consisted of more than the eyewitness testimony of the complainant; rather, it consisted of the testimony of a

complainant who testified at trial that he recognized all three perpetrators after having seen them on, essentially, a daily basis. Also, the evidence established that, immediately after the crime, this witness described these perpetrators as wearing the same type of clothing that was, in fact, worn by the defendant and the two codefendants at the time of their apprehension within minutes after the crime. At the time of their arrest one of these men was found to be in possession of a screwdriver. On numerous occasions, evidence of this nature has been considered overwhelming (*see e.g. People v Singletary,* 302 AD2d 952 [2003], *lv denied* 100 NY2d 542 [2003]; *People v Santiago,* 255 AD2d 63 [1999]; *People v Carter,* 166 AD2d 660 [1990]).

In light of the overwhelming nature of the evidence of guilt, a new trial is warranted on the basis of prosecutorial misconduct only when such misconduct has been properly preserved for review as a matter of law and where it may not be deemed harmless in the sense that there was a "significant probability that the defendant would have been acquitted if the remarks had not been made" (*People v Diaz,* 239 AD2d 518, 519 [1997], citing *People v Crimmins,* 36 NY2d 230, 242 [1975]; *People v Roopchand,* 107 AD2d 35 [1985], *affd* 65 NY2d 837 [1985]; *see also People v Singletary, supra),* or when the misconduct complained of violated the defendant's "fundamental right to a fair trial" (*People v Crimmins, supra* at 238; *see People v Daly,* 98 AD2d 803 [1983], *affd* 64 NY2d 970 [1985]). Under either standard, a new trial is not warranted in this case.

While it may have been technically improper for the prosecutor to observe that "no one has disputed" the complaining witness's testimony to the effect that the three men he saw in his apartment were part of a group of persons who would habitually "hang out" in the schoolyard behind his apartment (*see e.g. People v Torres,* 223 AD2d 741 [1996]; *People v Scott,* 138 AD2d 421 [1988]; *People v Allen,* 127 AD2d 840 [1987]), there was no objection to these remarks, and reversal on the basis of those comments is not warranted in the exercise of our interest of justice jurisdiction.

Also, while the prosecutor may have indulged in undue speculation to the extent that she suggested that the three men may have made plans for the future that entailed the use of the screwdriver found in the possession of one of them, we do not believe that there is any reasonable probability, in light of the overwhelming evidence of guilt, that the verdict was affected by this impropriety, to which there was an "unelaborated general objection" (*People v Balls,* 69 NY2d 641, 642

[1986]; *see People v Shelton,* 307 AD2d 370 [2003]; *People v Jackson,* 304 AD2d 327 [2003]).

The prosecutor repeatedly stressed that the complaining witness had "no motive to lie," and had "no axe to grind with anybody here." We do not agree with our dissenting colleague that these and similar comments, to some of which objections were made, warrant reversal.

The defense counsel, in his summation, asserting that the complainant contradicted himself on a collateral issue, stated, among other things, "you [the jury] never got the truth from him." Counsel also suggested that the witness had, at some point after the arrest, realized that his identification was not accurate, and had concocted his testimony about having recognized the three men from the schoolyard in order to "enhance his credibility." Counsel added, "I submit to you that he would lie if he felt it was necessary * * * that he would lie if he felt he had to, and I submit to you that he in fact did." In light of these remarks, it was within the bounds of proper advocacy for the prosecutor to point out that the complaining witness had no particular "axe to grind" with the defendant, and no apparent motive to lie about his recognition of the defendant based on his having seen him in the neighborhood (*see e.g. People v Anthony,* 24 NY2d 696, 703-704 [1969]; *People v Swinson,* 176 AD2d 613 [1991]; *People v Rodriguez,* 159 AD2d 356 [1990]; *People v Banks,* 124 AD2d 1064 [1986], *lv denied* 69 NY2d 824 [1987], *cert denied* 484 US 834 [1987]).

"[I]n this imperfect world, the right of a defendant to * * * a fair trial, does not necessarily guarantee him a perfect trial" (*People v Rivera,* 39 NY2d 519, 523 [1976]; *see also Delaware v Van Arsdall,* 475 US 673, 681 [1986]). Here, the defendant received an eminently fair trial, and although the prosecutor on occasion overstepped the bounds of proper advocacy, there is no significant probability that the jury verdict was affected by these improprieties.

As is evident from the foregoing, we do not agree with the defendant's argument that the jury verdict was not supported by legally or factually sufficient evidence.

For these reasons, the judgment is affirmed. Prudenti, P.J., Townes and Rivera, JJ., concur.

Mastro, J., dissents and votes to reverse the judgment, on the law and as a matter of discretion in the interest of justice, and order a new trial, with the following memorandum: Michael Adamo (hereinafter the defendant) was one of three defendants tried and convicted of a burglary committed on October 17, 2000, and offenses related thereto. The convictions

were based on the identification testimony of one witness, the complainant who, in his 911 call, originally described the three perpetrators as two Hispanic males (later amending this to say one was possibly white) and one Indian, between 5 feet 4 inches, 5 feet 5 inches, and 5 feet 6 inches tall, two wearing black jackets and black caps and one wearing a gray jersey.

The defendant is approximately 5 feet 10 inches tall (his codefendants are approximately 5 feet 9 inches and 5 feet 11 inches), and the defendant apparently does not look Hispanic (the defense counsel had the defendant display himself to the jury and rested, arguing that under no circumstances could the defendant be regarded as a Hispanic male). In support of his identification, the complainant testified at trial that he told the police that he recognized the perpetrators from having seen them essentially on a daily basis for the past year in the schoolyard in back of his home. Detective Bordonaro, who arrived in response to the call within minutes and proceeded to canvass the neighborhood with the complainant in search of the perpetrators, testified that the complainant never told him he knew the three people who were arrested and did not recall the complainant telling him that he often saw the same three men in the back of his home.

The jury's deliberations spanned three days and, before reaching its verdict, it twice indicated that it was deadlocked on the charges; each note resulted in *Allen*-type charges from the court (*see Allen v United States,* 164 US 492 [1896]).

During summation the defendant's attorney and the codefendants' attorneys objected to many of the prosecutor's comments and, at the close of summation, moved for a mistrial based on these improprieties. To the extent that contentions regarding some of these improper summation comments were not properly preserved for appellate review, this Court can pass upon them under its authority to do so in the exercise of its interest of justice jurisdiction (*see* CPL 470.15 [6] [a]).

The prosecutor began her summation by improperly asserting that the jury had heard testimony from the complainant in which he asserted that: "[he] recognized these three defendants when they broke into his home * * * and the fact that he recognized them is not really disputed. None of these attorneys has—no one has disputed the fact that these three individuals hung out in that schoolyard behind * * * [*the complainant's*] house." This misrepresented the trial record, which showed that defense counsel had disputed both of these facts when cross-examining the witness and, more importantly, improperly focused attention on the defendant's failure to testify (*see*

*People v Torres,* 223 AD2d 741, 742 [1996]; *People v Brown,* 91 AD2d 615, 616 [1982]).

In addition, the prosecutor commented, "[w]hy they didn't drop off the burglar's tools, I don't know. I don't know what they were planning to do later that day. That maybe they'd come in handy." This comment concerning a screwdriver found on one of the defendants at the time of his arrest called upon the jury to draw the conclusion that the defendant intended to commit a similar crime later, a conclusion that was irrelevant, prejudicial, and not fairly inferable from the evidence (*see People v Ashwal,* 39 NY2d 105, 110-111 [1976]). This was not, as the People contend, an appropriate response to the summation comments by defendants' attorneys emphasizing the apparent inconsistency of the defendants having kept the screwdriver while disposing of the fruits of the crime.

Furthermore, the prosecutor repeatedly stated, over sustained objections, that the victim had "no motive to lie." She went on to say "I submit to you [the witness] has reason to be extra careful with accusing people. [He] knows how it feels to be accused of a crime." The People contend that this was a fair response to a comment by codefendant's counsel that the complainant "is a person who you have to believe in order to convict my client, who has a history of lying in this building, in court," referring to the fact that the complainant contradicted himself a number of times on the stand with regard to his own criminal case. While it might have been appropriate for the prosecution to have "concentrated, in argument on proved facts and circumstances and the inferences to be drawn therefrom in order to support or undermine the credibility of any witness" it was impermissible for her to present herself as an unsworn witness and vouch for the victim, as she, in effect, did (*People v Bailey,* 58 NY2d 272, 277 [1983]).

Since the evidence in this one-witness identification case was not overwhelming, as further supported by the fact that the jury struggled to reach its verdict, the cumulative effect of the prosecutor's remarks cannot be deemed to be harmless error, and a new trial is required (*see People v Smith,* 288 AD2d 496 [2001]; *People v Robinson,* 260 AD2d 508 [1999]).