■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN OLIVER, Appellant. [929 NYS2d 182]—

The defendant's contention that the evidence was legally insufficient to support his conviction is without merit. Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

After subtracting the periods of delay which were due to the defendant's pretrial motion practice (*see* CPL 30.30 [4] [a]; *People v Worley*, 66 NY2d 523, 527 [1985]; *People v Mazarakis*, 54 AD3d 876, 877 [2008]) and adjournments requested by the defendant (*see* CPL 30.30 [4] [b]), the total time chargeable to the People was less than six months (*see* CPL 30.30 [1] [a]; *see generally People v Kendzia*, 64 NY2d 331 [1985]).

The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials. "The credibility determinations of the Supreme Court, which saw and heard the witnesses at the suppression hearing, are entitled to great weight on appeal, and will not be disturbed unless they are unsupported by the record" (*People v Timmons*, 54 AD3d 883, 885 [2008]; *see People v Prochilo*, 41 NY2d 759, 761 [1977]). The evidence presented at the suppression hearing supports the Supreme Court's determination that the defendant's spontaneous statements, made after a police officer arrested him but before *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) were administered, were not triggered by any police questioning or other conduct which reasonably could have been expected to elicit a statement

from him (*see People v Whyte*, 47 AD3d 852, 853 [2008]; *People v Baliukonis*, 35 AD3d 626, 627 [2006]).

The defendant's contention that the evidence presented to the grand jury was legally insufficient is not reviewable on this appeal, since the defendant's guilt was proven beyond a reasonable doubt at trial (*see* CPL 210.30 [6]; *People v Bajana*, 82 AD3d 1111, 1112 [2011], *lv denied* 17 NY3d 791 [2011]; *People v Parker*, 74 AD3d 1365, 1366 [2010]; *People v Capehart*, 61 AD3d 885, 886 [2009]; *People v Folkes*, 43 AD3d 956, 957 [2007]).

The defendant's contentions concerning the validity of the arrest warrant are unpreserved for appellate review and, in any event, are without merit (*see* CPL 120.10). The defendant's remaining contentions are without merit or involve matter dehors the record.

We disagree with our dissenting colleague's conclusion that the Supreme Court was obligated to, sua sponte, declare a mistrial based upon the fact that the complainant identified someone other than the defendant—but who had the same name as the defendant—as the perpetrator from a photo array shown to him by the police. As a threshold matter, the defendant, who proceeded pro se at trial, rejected his legal advisor's recommendation that he move for a mistrial based upon the "confusion" with the photo array. Furthermore, since the defendant does not argue on appeal that the Supreme Court should have, sua sponte, declared a mistrial notwithstanding his refusal to request such relief at trial, this issue is not before us on this appeal.

Although the issue is not before us, we note that contrary to the conclusion reached by the dissent, reversal would not be warranted. At trial, the People presented evidence that the defendant's fingerprint was found on the finger of a white latex glove recovered at the gas station where the subject robbery occurred and the defendant's statement to the police placing himself at the crime scene. Also, the version of events testified to by the defendant, in which he placed himself at the gas station around the time of the incident and admitted to having an altercation with the complainant and attempting to remove a surveillance videotape from the premises, was highly suspect. The complainant's photo array misidentification and the defect in the photo array were disclosed to the jury through witness testimony, and the photo array itself was admitted into evidence during the defendant's cross-examination of the complainant. Finally, in addition to rejecting his legal advisor's recommendation that he move for a mistrial, the defendant declined the Supreme Court's offer to strike the complainant's in-court

identification testimony and indicated that he intended to use the complainant's misidentification to undermine the People's case. Under these circumstances, consideration of whether the trial court should have, sua sponte, declared a mistrial on the basis of issues related to the photo array would be unwarranted on this appeal (*see People v Moore*, 66 AD3d 707, 710 [2009], *affd* 15 NY3d 811 [2010]). Covello, J.P., Angiolillo and Dickerson, JJ., concur.

Hall, J., dissents and votes to reverse the judgment appealed from and order a new trial, with the following memorandum: While I agree with certain determinations made by the majority, I must respectfully dissent in light of certain errors at trial, which, in my view, require reversal in this case.

The defendant was arrested in connection with a September 2005 robbery that occurred at a Hess gas station in Elmont. At trial, the assistant manager of the gas station (hereinafter the complaining witness) testified that at 4:15 A.M. on the morning of the robbery, he was cleaning up a spill in the vestibule of the gas station, when he heard a noise coming from the manager's office and observed that the door was slightly open. The complaining witness tried to open the door, but was not able to do so. He then saw the defendant coming from behind the door. The defendant opened the door and tried to grab the complaining witness's hand. However, the defendant did not succeed. According to the complaining witness, the vestibule was "pretty lit" and he could see most of the defendant's front. The complaining witness tried to escape, but he tripped and fell. While the complaining witness was on the floor, he saw "something like a knife" with a four-inch blade in the defendant's hand. After the complaining witness managed to get out of the building, he observed the defendant shaking the cash register.

The complaining witness was driven to a nearby gas station, where he called the 911 emergency telephone number. While the complaining witness was making the call, he observed the defendant run past the car. The defendant was holding a money bag. When the police arrived about two minutes later, the complaining witness returned to the Hess gas station. At about 4:50 A.M., police officers took the complaining witness to a man named Victor Covington to see if the complaining witness would identify him as the robber. The complaining witness stated that Covington was not the man who robbed the gas station earlier.

On October 19, 2005, the complaining witness was shown a photo array and selected photo number three as the photo of the person who committed the robbery. The complaining witness identified the defendant as the assailant at trial.

The defendant proceeded pro se at trial, with a court-appointed legal advisor. During the defendant's cross-examination of the complaining witness, he showed the complaining witness a photo array, and asked the complaining witness if he identified any of the individuals in the photo array. The complaining witness replied that he picked out number three, "the person [he] had described to be the robber." However, the defendant stated that photo number three was not a picture of him.

On the next day of the trial, the prosecutor informed the Supreme Court that, although the complaining witness, upon viewing the photo array, had identified the person depicted in photo number three, photo number three was not a photograph of the defendant. The prosecutor explained that the individual depicted in photo number three had the same name as the defendant—Kevin Oliver. The prosecutor conceded that the complaining witness picked out the wrong individual.

Subsequently, a Nassau County Police Department detective testified at trial that on October 19, 2005, he showed a series of six photographs to the complaining witness, and the complaining witness picked out photo number three as depicting his assailant. The detective testified that photo number three depicted an individual by the name of Kevin Oliver, who was not the same Kevin Oliver as the defendant.

After the detective's direct testimony, the Supreme Court asked the defendant if he would like the complaining witness's in-court identification of him to be stricken. The defendant replied, "No, sir." The Supreme Court then stated, "So, basically, you want to continue with cross examination of this detective, and then use [the complaining witness's] misidentification, for want of a better word, of his assailant to affect the credibility of the [complaining] witness . . . Is that what you want to do?" The defendant stated, "Yes, sir."

The Supreme Court directed the defendant to discuss the matter with his legal advisor. After speaking to his legal advisor, the defendant acknowledged that he was not asking the Supreme Court to strike the identification of the complaining witness, and that he wished to proceed with the cross examination of the detective. The legal advisor then set forth on the record his disagreement with the position of the defendant. The legal advisor stated that he advised the defendant to move for a mistrial "based upon the confusion with the photo pack," but the defendant refused. The legal advisor also advised the defendant to make a *Brady* application (*see Brady v Maryland*, 373 US 83 [1963]) to strike the identification procedure and for

an appropriate jury charge. The defendant declined to take that advice as well.

In evaluating the events at trial, I am troubled by the fact that the People did not discover, until midway through the trial, that the photograph identified by the complaining witness in the photo array was not a photograph of the defendant. It also appears that the People did not turn over the photo array to the defendant before trial (*id.*).

Moreover, although the Supreme Court asked the defendant if he would like the in-court identification of the complaining witness to be stricken, the court did not, sua sponte, strike the testimony when it was clear that an injustice was apparent. In my view, considering the peculiar circumstances of this case, it was manifestly necessary for the Supreme Court to sua sponte declare a mistrial in order to protect the defendant's right to a fair trial (*see* CPL 280.10 [3]; *People v Tinsley*, 58 NY2d 990 [1983]; *People v Clearwater*, 269 AD2d 462 [2000]; *see also People v Parker*, 61 AD3d 439 [2009]).

There was a fundamental error which formed the basis of the defendant's arrest and ultimate conviction. The person who the complaining witness identified in the photo array was not the defendant, but another person of the same name. Upon a comparison of photo number three and a photograph of the defendant, it is clear that these photographs depict two different people. In a situation such as this, where an injustice is apparent, the trial court has a responsibility to step in and correct the injustice. "Whenever the ends of justice might otherwise be defeated it is the duty of the Trial Judge to declare a mistrial" (*Matter of Napoli v Supreme Ct. of State of N.Y.*, 40 AD2d 159, 161 [1972], *affd* 33 NY2d 980 [1974], *cert denied* 417 US 947 [1974]). This case presented a situation where justice might have been defeated and, therefore, it was the duty of the Supreme Court to declare a mistrial.

Although, despite the advice of his legal advisor, the defendant refused to ask for a mistrial, this issue should be reached in the exercise of our interest of justice jurisdiction (*see* CPL 470.15 [3] [c]; [6] [a]).

Furthermore, the errors at trial cannot be considered harmless because the evidence of guilt was not overwhelming (*see People v Crimmins*, 36 NY2d 230, 237 [1975]). The defendant was charged with robbery in the first degree under Penal Law § 160.15 (3). Under that section, a person is guilty of robbery in the first degree "when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [u]ses or

threatens the immediate use of a dangerous instrument" (Penal Law § 160.15 [3]). Here, when the complaining witness tried to open the door to the manager's office, the defendant opened the door and tried to grab the complaining witness, but was unsuccessful. The complaining witness tried to get away but fell, and when he was on the floor, he saw "something like a knife" in the defendant's hand. There was no evidence that the defendant made any threats to the complaining witness, or that the defendant ever attacked or threatened the complaining witness with a knife.

A fingerprint was found on a white latex glove recovered from the scene, and it was identified as the defendant's fingerprint. However, the defendant testified at trial that he went to the Hess gas station to get change for a $100 bill. According to the defendant, he gave the complaining witness a $100 dollar bill to show that he was a legitimate customer, and then went to get a drink. The defendant testified that when he returned to the window and asked for his change, the complaining witness refused to give it to him. Then, according to the defendant, the complaining witness slipped on liquid on the floor and fell; the defendant was holding a silver cell phone in his hand at the time. The defendant then went to the cash register and took his money, and nothing else.

While it was within the province of the jury to discredit the defendant's testimony, the evidence of guilt was not overwhelming. Thus, the errors at trial cannot be considered harmless (see People v Mullings, 83 AD3d 871 [2011]).

In light of the forgoing, I am not confident in the defendant's conviction. Accordingly, I respectfully dissent.