[984 NE2d 914, 960 NYS2d 716]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAMIEN WARREN, Respondent.

Argued January 7, 2013; decided February 12, 2013

394

**POINTS OF COUNSEL**

*Frank A. Sedita, III, District Attorney*, Buffalo (*Donna A. Milling* of counsel), for appellant. Defendant was not deprived of a fair trial based on the manner in which the court conducted a simultaneous bench trial of codefendant and jury trial of defendant. Defendant's severance claim is both unpreserved and meritless. (*People v Ricardo B.*, 73 NY2d 228; *People v Fleming*, 76 AD3d 582, 15 NY3d 893; *People v Wallace*, 153 AD2d 59, 75 NY2d 925; *People v Irizarry*, 83 NY2d 557; *People v Owens*, 22 NY2d 93; *People v Bornholdt*, 33 NY2d 75; *People v Mahboubian*, 74 NY2d 174; *People v Cruz*, 66 NY2d 61, 481 US 186, 70 NY2d 733; *People v Johnson*, 124 AD2d 1063, 69 NY2d 713, 69 NY2d 951; *People v De Los Angeles*, 270 AD2d 196, 95 NY2d 889.)

*Michael L. D'Amico*, Buffalo, for respondent. The Appellate Division properly found respondent was deprived of a fair trial. (*People v Cona*, 49 NY2d 26; *People v Turriago*, 90 NY2d 77; *People v Johnson*, 47 NY2d 124; *People v Amato*, 173 AD2d 714, 78 NY2d 919; *People v Wallace*, 153 AD2d 59; *People v Imburgia*, 134 Misc 2d 1057; *People ex rel. Rohrlich v Follette*, 20 NY2d 297; *People v Firestone*, 118 Misc 2d 314; *People v Ricardo B.*, 73 NY2d 228; *People v Irizarry*, 83 NY2d 557.)

## OPINION OF THE COURT

READ, J.

Defendant Damien Warren and three codefendants, Eric Young, Marvin Howard and Nathaniel Williams, were jointly indicted on a theory of accomplice liability for second-degree murder (Penal Law § 125.25 [1]) and second-degree weapon possession (Penal Law § 265.03 [former (2)]) in connection with a drug-related shooting death in the City of Buffalo on March 23, 2006. The week before jury selection, Young, who had just waived his right to a jury trial, was offered a plea to a class A misdemeanor in exchange for his testimony. Howard also waived his right to a jury, which prompted Warren's attorney to ask County Court to try Warren and Howard separately, or, alternatively, direct that Howard testify outside the jury's presence if he took the stand. The judge denied these requests, and a joint bench and jury trial ensued.

Among the People's witnesses, both Young and a jailhouse informant, who unbeknownst to Warren was related to the victim, implicated Warren as the shooter; Young testified that Warren pursued the wounded victim as he stumbled to a nearby park and fell to the ground, where the armed Warren walked up to him.* Young additionally told the jury that Williams ran in the opposite direction of the park after the first shots were fired; he further stated that he never saw Williams with a gun, and that Howard was simply not present when the gunfire erupted.

Another witness, a 16-year-old runaway who lived with the victim, claimed that Warren, Williams and Howard each possessed a gun and fired at the victim as he stood in front of the house where he sold crack, talking to Young; and that it was Howard who ran down the victim in the park and "kick[ed]

---

* The medical examiner testified that the victim suffered six gunshot wounds, five to his extremities and buttocks, which were probably survivable. The lethal bullet entered the left side of the victim's chest.

something" on the ground, while Williams ran the other way. This witness related that Young had earlier pulled up in a car, which he parked across the street from the victim's house, in front of the house from which Warren dealt drugs; and that Young had shouted out to the victim, at the time near an open, second-floor window, enticing him out of doors. She also claimed that Young drove Warren away from the crime scene after the shooting; and that Warren, as he was entering the passenger side of the car, threatened to kill her if she said anything about what she had seen. This witness was awaiting sentence on an armed robbery charge at the time of trial; many details of her testimony were inconsistent with her previous statements to the police or grand jury.

After the People rested, Warren's and Williams's attorneys each indicated that they did not intend to offer proof. Howard's counsel, however, advised the judge that his client planned to take the stand. Warren's attorney then again asked County Court for Howard to testify outside the jury's presence because the People's proof had closed with respect to Warren, and the jury would not be deciding Howard's guilt or innocence. In opposition, the People argued that the trials were not separate, Howard might corroborate the People's witnesses, he was subject to cross-examination, and the jury had a right to hear from him. The judge denied Warren's attorney's request, expressing her belief that Howard's defense would not be "separate and distinct as to any of the defendants."

Howard, a drug dealer whose supplier was Warren, claimed that he was sitting on the steps of the front porch of a friend's house down the street from the crime scene when he heard gunfire and saw Warren chase someone into the park while Williams fled in the opposite direction. He further testified that another friend then drove him to the park, where they saw the victim lying on the grass, not moving. At that point, Howard implored this friend to "take [him] home" as "it[ ] [was] about to [get] hot," and they drove off. A few blocks away, Warren flagged down the friend's car and hitched a ride to Howard's house. Once there, according to Howard, Warren acknowledged shooting the victim; washed his hands with disinfectant; and buried a gun in the backyard and set his sweatshirt on fire. The jury also heard recordings of telephone calls made by Howard from jail, directing his brother to unearth a hidden gun and deliver it to a reverend. The brother testified that, after retrieving the gun, he instead handed it over for safekeeping to a friend, who sold it.

The jury convicted Warren and acquitted Williams of both crimes charged, while the judge acquitted Howard. County Court sentenced Warren to concurrent terms of imprisonment of 25 years to life for murder, and 15 years followed by five years of postrelease supervision on the weapon possession conviction. Warren appealed on the ground that the judge's refusal to direct Howard to testify outside the jury's presence deprived him of his right to a fair trial. The Appellate Division unanimously agreed and reversed the judgment of conviction and sentence (87 AD3d 36 [4th Dept 2011]). A Judge of this Court granted the People leave to appeal (18 NY3d 862 [2011]), and we now affirm.

Once Howard waived a jury trial, there arose a situation akin to trial by dual juries, which we have called, "at root, a modified form of severance" (*see People v Irizarry*, 83 NY2d 557, 560 [1994]). And trials with dual juries, which are to be used "sparingly" (*People v Ricardo B.*, 73 NY2d 228, 235 [1989]), are "evaluated under standards for reviewing severance motions generally, which require a showing of prejudice to entitle a defendant to relief" (*Irizarry*, 83 NY2d at 560, citing *Ricardo B.*, 73 NY2d at 233 and *People v Mahboubian*, 74 NY2d 174, 183 [1989] [internal quotation marks omitted]). Thus, Warren must show that he was prejudiced by the judge's decision to allow the jury to hear Howard's defense.

■ Here, the People could not have forced Howard to testify against Warren. Further, it would have been easy enough for the judge to excuse the jury for Howard's defense. After all, the jury was not the factfinder in Howard's trial. In those cases involving multiple juries where we have found no prejudice, the trial judge took pains to shield each jury from presentation of evidence admissible only before the other (*see Ricardo B.*, 73 NY2d at 232; *Irizarry*, 83 NY2d at 559). That the second factfinder here was the court and not a jury does not alter the analysis.

Indeed, if Howard had not waived a jury trial, Warren could have made a strong case for severance on the ground that his defense was irreconcilable with Howard's (*see Mahboubian*, 74 NY2d at 184 ["severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt"]; *see also People v Cardwell*, 78 NY2d 996, 998 [1991] [severance required because, during the conduct

of the trial, codefendant's attorney "took an aggressive adversarial stance against" the defendants, "in effect becoming a second prosecutor," which resulted in "damaging evidence (being) elicited not by the People, but by a codefendant"]). In that event, whether the trials were conducted separately or simultaneously with separate juries, Warren's jury would not have been permitted to hear the witnesses who testified on Howard's behalf (*Ricardo B.*, 73 NY2d at 232; *Irizarry*, 83 NY2d at 559). No less is required for the modified severance that occurred here.

Finally, we cannot say that the judge's failure to prevent the jury from hearing Howard's defense was harmless. The People's case against Warren was certainly strong, but not overwhelming. Perhaps as a result, the prosecutor essentially adopted Howard's narrative of the shooting, even though it was at odds with some of the testimony of the 16-year-old girl, the People's main witness. As the Appellate Division observed, "the prosecutor repeatedly referenced [Howard's testimony] during his summation to the jury, emphasizing that, although he was not the People's witness, he had corroborated the People's proof" against Warren (87 AD3d at 39). Howard's vivid account may well have sealed Warren's fate with the jurors.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH and PIGOTT concur; Judge RIVERA taking no part.

Order affirmed.