THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOHN FOX, Appellant. [998 NYS2d 440]—

Appeal by the defendant from a judgment of the Supreme
Court, Kings County (Konviser, J.), rendered November 20,
2007, convicting him of manslaughter in the second degree as a
hate crime, attempted robbery in the first degree as a hate
crime, and attempted robbery in the second degree as a hate
crime, upon a jury verdict, and imposing sentence. The appeal
brings up for review the denial, after a hearing, of that branch
of the defendant's omnibus motion which was to suppress his
statements to law enforcement officials.

Ordered that the judgment is affirmed.

On the evening of October 8, 2006, the then-19-year-old de-
fendant and his friends devised a plan to obtain marijuana, or
money to buy marijuana, by luring a gay man to their neighbor-
hood and stealing marijuana or money from him. As part of the
scheme, the defendant and his friends visited an Internet chat
room for gay men, using the defendant's screen name, and
struck up an instant messaging conversation with a 29-year old
gay man (hereinafter the victim) who happened to be visiting
the chat room at that time. During the chat, the victim agreed
to meet the defendant. Although the original plan did not
involve the use of force, matters escalated when the defendant
and the victim reached Plumb Beach in Brooklyn, where,
unbeknownst to the victim, the defendant's friends were await-
ing them. One member of the group, the codefendant Ilya
Shurov, suddenly attacked the victim and, with the defendant
following close behind, chased the victim as he ran back to his
car and attempted to flee. Shurov pulled him out of his car, and
the struggle continued as the victim fled onto a nearby highway
and across two lanes, with Shurov and the defendant still in
pursuit. While attempting to evade his attackers, the victim
entered the third lane and was fatally injured by a passing vehi-
cle.

The defendant and codefendant Anthony Fortunato were tried
together, with separate juries. Fortunato, unlike the defendant,
testified in his own defense. The defendant contends that he
was deprived of his constitutional right to be present at a mate-
rial stage of the trial since he and his jury were not present

when Fortunato testified. This contention is without merit since the portion of Fortunato's trial at which the defendant was not present "was not a critical stage of [the defendant's] trial, as it was unrelated to his prosecution" (*People v Morris*, 187 AD2d 460, 461 [1992]; *see People v Warren*, 20 NY3d 393, 397-398 [2013]; *People v Irizarry*, 83 NY2d 557 [1994]; *People v Bogan*, 78 AD3d 855 [2010]; *People v Rolle*, 4 AD3d 542, 543 [2004]; *People v Jackson*, 219 AD2d 675 [1995]; *cf. People v Ricardo B.*, 73 NY2d 228 [1989]).

The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials. "The credibility determinations of the Supreme Court, which saw and heard the witnesses at the suppression hearing, are entitled to great weight on appeal, and will not be disturbed unless they are unsupported by the record" (*People v Timmons*, 54 AD3d 883, 885 [2008]; *see People v Oliver*, 87 AD3d 1035, 1036 [2011]). The record developed at the suppression hearing establishes that police detectives woke the defendant in his dorm room at about 2:00 a.m. on October 10, 2006, and that he voluntarily accompanied the detectives to a precinct station house. They did not ask him any questions pertaining to the incident, or discuss the incident, until 2:52 a.m., and the defendant was not handcuffed or searched while en route or at the station house. At 2:52 a.m., an interview at the station house began with Detective Frank Byrnes asking the defendant whether he had been in Brooklyn over the weekend. Under these circumstances, "a reasonable person, innocent of any crime, would [not] have believed that [he] was in police custody" (*People v Delfino*, 234 AD2d 382, 383 [1996]; *see People v Thomas*, 292 AD2d 549, 550 [2002]; *People v Ellerbe*, 265 AD2d 569, 570 [1999]). Although the defendant was never told that he was free to leave, he neither asked if he could do so, nor protested the questioning (*see People v Delfino*, 234 AD2d at 383). Significantly, the defendant was questioned for only eight minutes before the questioning was stopped because Detective Byrnes became suspicious of the defendant's answers, and his *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) were administered (*see People v Delfino*, 234 AD2d at 383; *People v Reaves*, 209 AD2d 647, 648 [1994]; *People v Mosley*, 196 AD2d 893, 893-894 [1993]). The defendant's contentions concerning suppression are based solely on his own testimony at the suppression hearing, which the court found to be "inconsistent and incredible." There is no basis for rejecting the hearing court's credibility determination, and we conclude that the evidence supports its conclusion, based on the testimony of several detectives, that the defendant was not taken into custody until he

was "provided with *Miranda* warnings and implicat[ed] himself in the attack on the [victim]." The evidence also supports the court's conclusion, based upon its credibility determination, "that the defendant was advised of and knowingly, voluntarily and intelligently waived his *Miranda* rights not just once but on three separate occasions" before providing the inculpatory statements at issue.

The defendant's contention that the Supreme Court's charge to the jury did not adequately instruct the jury on intoxication is unpreserved for appellate review (*see* CPL 470.05 [2]). In any event, the charge, when reviewed in its entirety, adequately instructed the jury on intoxication. The court instructed the jury twice, explicitly, once with regard to the first count, charging the defendant with murder in the second degree as a hate crime, and again with regard to the second count, charging the defendant with murder in the second degree, that it could consider "evidence of the defendant's intoxication . . . whenever it is relevant to negate an element of a crime charged," and that, in determining "whether the defendant had the intent necessary to commit a crime, you may consider whether the defendant's mind was affected by intoxicants to such degree that he was incapable of forming the intent necessary for the commission of that crime." Although the court did not provide the same instruction again, it may be presumed that, when the court repeated the charge for "intent" with regard to the counts on which the defendant was convicted, including the "hate" element of manslaughter in the second degree as a hate crime, the jury "[had] 'sufficient intelligence' to make [the] elementary logical inferences" (*People v Samuels*, 99 NY2d 20, 25-26 [2002]; *see People v Radcliffe*, 232 NY 249, 254 [1921]) that here, too, it could consider the defendant's level of intoxication in determining whether "the required intent [could] be inferred beyond a reasonable doubt from the facts [it found] to have been proven." The cases relied upon by the defendant are distinguishable from the instant case since, in those cases, the court read from section 15.25 of the Penal Law, which provides the general intoxication charge, but did not explain the charge or relate it "in any manner . . . to the evidence" (*People v Valentine*, 54 AD2d 568, 568 [1976]; *see People v Lawrence*, 78 AD2d 702 [1980]; *People v Summer*, 64 AD2d 658, 659 [1978]). Here, in contrast, the court related the effect of intoxication to the specific element of intent in connection with the first and second counts, instructed that the jury could consider evidence of intoxication whenever relevant to negate an element of "a crime charged," and provided a specific definition of the required intent with regard to the counts on which the defendant was convicted.

The defendant's contention that the evidence was legally insufficient to establish his guilt of a hate crime beyond a reasonable doubt is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484 [2008]). In any event, viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt of the three hate crimes of which he was convicted beyond a reasonable doubt (*see People v Assi*, 14 NY3d 335, 340 [2010]; *People v Fortunato*, 75 AD3d 557 [2010]). Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel under the United States Constitution (*see Strickland v Washington*, 466 US 668, 688 [1984]). Moreover, the defendant was not deprived of the effective assistance of counsel under the New York Constitution since, viewing defense counsel's performance in totality, counsel provided meaningful representation (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

The defendant's contentions that he was deprived of his constitutional rights to present evidence and to a fair trial are unpreserved for appellate review and, in any event, without merit. The defendant's remaining contentions are without merit. Balkin, J.P., Leventhal, Hinds-Radix and LaSalle, JJ., concur.

---

Motion by the respondent to strike stated material on page 39 of the appellant's main brief on an appeal from a judgment of the Supreme Court, Kings County, rendered November 20, 2007, on the ground that it refers to matter dehors the record. By decision and order dated March 31, 2014, the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is granted, and the sentence on page 39 of the appellant's main brief which references the defendant's motion pursuant to CPL 440.10 and the following sentence are deemed stricken and have not been considered in the determination of the appeal (*see People v Stocks*, 101 AD3d 1049,

1052 [2012]). Balkin, J.P., Leventhal, Hinds-Radix and LaSalle, JJ., concur.