■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY GRIGOROFF, Appellant. [14 NYS3d 497]—

Appeal by the defendant from a judgment of the County Court, Putnam County (Reitz, J.), rendered December 14, 2010, convicting him of murder in the second degree, criminal possession of a weapon in the second degree, and attempted burglary in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant, in the course of a 12-hour interrogation during which he was interviewed by multiple teams of police investigators, gave statements to the police concerning the homicide which is the subject of this case. Those statements indicated that the defendant, his identical twin brother, and an individual named Byron Mountain entered a parking lot outside of the Garrison Garage (hereinafter the garage) in Putnam County and parked their vehicle there with the intention of burglarizing an office located on the premises. The defendant remained in the vehicle while his brother served as a lookout. Mountain was in the process of walking around the exterior of the garage when an individual arrived in a tow truck and confronted Mountain. Mountain produced a gun from his waistband and shot the individual, who later died.

The defendant was charged with murder in the second degree (felony murder), criminal possession of a weapon in the second degree, and two counts of attempted burglary in the second degree. Neither Mountain nor the defendant's identical twin brother was charged with any crime relating to this incident. Prior to his trial, the defendant moved to, inter alia, suppress the statements he made to police on the ground that those statements were involuntarily obtained. After a hearing at which both the defendant and police witnesses gave conflicting testimony, the court denied that branch of the defendant's motion.

At the defendant's trial, the primary evidence admitted against him was the statements that he made to law enforcement officials. The defendant testified on his own behalf, maintaining that he was coerced into giving the statements to the police and that he was innocent of the charges against him. The jury returned a verdict of guilty on all counts.

On appeal, the defendant initially contends that the court

should have granted that branch of his omnibus motion which was to suppress the statements that he made to law enforcement officials. "It is the People's burden to prove beyond a reasonable doubt that statements of a defendant they intend to rely upon at trial are voluntary" (*People v Thomas*, 22 NY3d 629, 641 [2014]; *see People v Guilford*, 21 NY3d 205, 208 [2013]). "To do that, they must show that the statements were not products of coercion, either physical or psychological" (*People v Thomas*, 22 NY3d at 641). "The task is the same where deception is employed in the service of psychologically oriented interrogation; the statements must be proved, under the totality of the circumstances . . . [to be] the product of the maker's own choice" (*id.* at 641-642).

Here, the defendant testified at the suppression hearing that his police interrogators failed to give him *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) prior to questioning him, and that they repeatedly promised him that if he told the truth he would be released and would serve no time in jail. However, the testimony of the law enforcement witnesses contradicted these aspects of the defendant's account. The police witnesses testified that the defendant was given *Miranda* warnings prior to the interrogation and that these warnings were repeated at various times throughout the questioning. The police witnesses also denied that any promises were made to the defendant. The hearing court found the defendant's version of the events unpersuasive and specifically credited the testimony of the law enforcement officials.

The conflicting testimony adduced at the suppression hearing presented a credibility question for the hearing court (*see e.g. People v Granger*, 122 AD3d 940, 940-941 [2014]). In reviewing a hearing court's factual determinations based largely upon an assessment of credibility, the determination of the trier of fact is ordinarily accorded great weight (*see Matter of Robert D.*, 69 AD3d 714, 716 [2010]; *cf. People v Bennett*, 57 AD3d 912, 912 [2008]; *People v Lopez*, 95 AD2d 241, 252 [1983]). Although, upon the exercise of our factual review power, this Court may make its own findings of fact if it determines that the hearing court incorrectly assessed the evidence (*see People v Lewis*, 117 AD3d 751, 752 [2014]), we discern no basis on this record to disturb the hearing court's factual determination (*see People v Fox*, 123 AD3d 844, 845-846 [2014]; *People v Granger*, 122 AD3d at 940-941; *People v Lewis*, 117 AD3d at 752).

Furthermore, contrary to the defendant's contention, the record of the suppression hearing does not show, as a matter of

law, that the duration and nature of the police interrogation completely undermined his constitutional right to remain silent (*cf. People v Thomas*, 22 NY3d at 642). Although the testimony of the law enforcement officials indicated that the police utilized deceptive techniques during the course of the defendant's interrogation, "[i]t is well established that not all deception of a suspect is coercive" (*People v Thomas*, 22 NY3d at 642). Here, in light of the credibility findings of the hearing court, the record does not show "that the deception was so fundamentally unfair as to deny due process or that a promise or threat was made that could induce a false confession" (*People v Tarsia*, 50 NY2d 1, 11 [1980] [citations omitted]; *see People v Tankleff*, 84 NY2d 992, 994 [1994]; *People v Gelin*, 128 AD3d 717 [2015]; *People v Pinto*, 103 AD3d 921, 922 [2013]).

The defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Finger*, 95 NY2d 894 [2000]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. In addition, there was sufficient evidence to satisfy the confession corroboration requirements of CPL 60.50 (*see People v Murray*, 40 NY2d 327 [1976]). Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]).

However, the judgment must be reversed and a new trial ordered based on the Supreme Court's error in admitting testimony regarding a separate shooting that occurred prior to the events underlying this case. In this regard, the People were permitted to elicit testimony to show that the defendant's identical twin brother shot an individual, less than two months before the incident at the garage, in an unrelated matter. Contrary to the People's contention, the defendant preserved his objection to this testimony by objecting on the specific ground now raised on appeal, and by asking for the testimony to be stricken and for a curative instruction (*see* CPL 470.05 [2]).

"Evidence of uncharged crimes or crimes committed by a person other than the defendant is generally inadmissible because it is highly prejudicial with little probative value" (*People v Exum*, 208 AD2d 557, 558 [1994]). Here, the evidence of the unrelated shooting was admitted in response to evidence introduced by the defense to show that the defendant and his uncharged accomplices exhibited a calm demeanor shortly after the shooting at the garage and that such a demeanor was

inconsistent with the People's contention that they had been recently involved in a violent crime. The People argued that evidence of the unrelated shooting was relevant to this case on the ground that it showed that the defendant's identical twin brother had similarly exhibited a calm demeanor after he shot an individual at a bar on a prior occasion.

Evidence that the defendant's identical twin brother had perpetrated a separate shooting less than two months prior to the shooting in this case was highly prejudicial to the defendant and had no bearing whatsoever on the defendant's culpability for the crimes charged (*see People v Thompson*, 75 AD2d 830 [1980]; *People v Roland*, 40 AD2d 1007 [1972]). This evidence "served no purpose other than to raise an inference of guilt by association" (*People v Roland*, 40 AD2d at 1007-1008; *cf. People v Williams*, 45 AD3d 1466, 1467-1468 [2007]). Accordingly, the Supreme Court erred in permitting the People to elicit such evidence inasmuch as the unfair prejudice to the defendant far exceeded its probative value (*see generally People v Agina*, 103 AD3d 739, 743 [2013]).

We further conclude that the trial court erred in permitting the People to introduce the testimony of a witness who stated that she attended a party where she overheard the defendant's identical twin brother make a statement indicating that he was involved in the shooting at the garage. The People failed to adequately demonstrate that this testimony fell within an exception to the hearsay rule (*cf. Tennessee v Street*, 471 US 409 [1985]; *People v Bryant*, 39 AD3d 768 [2007]). In any event, the prejudicial effect of this testimony outweighed its probative value.

Under the circumstances of this case, these errors were not harmless. The only evidence linking the defendant to this crime consisted of the statements made by the defendant to the police, which were contradicted by the defendant's testimony at trial and by the testimony of other witnesses and evidence presented by the defendant (*cf. People v Ryan*, 17 AD3d 1, 6-7 [2005]). Given this conflicting evidence as to whether the defendant was involved in the shooting at the garage, the evidence of his guilt was not overwhelming and, thus, "there is no occasion for consideration of any doctrine of harmless error" (*People v Crimmins*, 36 NY2d 230, 241 [1975]). Even assuming that there was overwhelming evidence of guilt, we cannot conclude that there was no significant probability that the jury would have acquitted the defendant had it not been for these errors (*see People v Ayala*, 75 NY2d 422, 431 [1990]; *People v Agina*, 103 AD3d at 743). Accordingly, reversal is required and the matter must be remitted for a new trial.

In light of our determination, we need not reach the defendant's remaining contentions. Chambers, J.P., Hall, Cohen and Miller, JJ., concur.