People v Feliciano (2020 NY Slip Op 07145)





People v Feliciano


2020 NY Slip Op 07145


Decided on December 01, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 01, 2020

Before: Gische, J.P., Gesmer, Kern, Kennedy, JJ. 


Ind No. 2327/14 Appeal No. 12340 Case No. 2018-2907 

[*1]The People of the State of New York, Respondent,
v
Jose Feliciano, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Claudia Trupp of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Rafael Curbelo of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Robert A. Neary, J.), rendered May 10, 2017, convicting defendant, after a jury trial, of murder in the second degree and robbery in the first degree, and sentencing him, as a second violent felony offender, to an aggregate term of 37 years to life, unanimously reversed, on the law, and the matter remanded for a new trial.
Appellant Jose Feliciano and a codefendant, Michael Roberts, were charged with murder in the second degree (Penal Law §125.25[3]), three counts of robbery in the first degree (Penal Law §160.15) and three counts of robbery in the second degree (Penal Law §160.10). These charges stemmed from allegations that Feliciano and Roberts, acting in concert, robbed and [*2]fatally shot one victim in his apartment and in immediate flight therefrom, robbed another victim.
After the People's motion to consolidate the indictments was granted, Roberts moved for a severance, arguing that a joint trial would threaten both defendants' rights to a fair trial since their defenses were antagonistic. Feliciano intended to, and did, argue at trial that he was merely present and unaware of Roberts' intent to rob and shoot the victim, whereas Roberts' position was that he did not participate in the charged crimes and that they were committed by Feliciano and an unidentified male. Feliciano joined in this application.
The court denied the motion and instead implemented a "dual jury" procedure (see e.g. People v Ricardo B., 73 NY2d 228 [1989]). Separate openings were employed. The trial proceeded with both juries hearing the People's evidence common to the charges against both defendants and both hearing cross examination of the People's witnesses, conducted by Feliciano's and Roberts' counsels, respectively. One jury, however, was excused when the People presented evidence that was admissible only before the other, and during cross examination concerning the same. Separate defense cases, summations and jury charges were also employed. After the dual jury trial, Feliciano was found guilty of second degree murder and first degree robbery, whereas Roberts was acquitted.
As a threshold matter, we have considered and reject the People's preservation argument. Feliciano joined Roberts' application for a severance. Nor does the record establish that, after the severance motion was denied, that Feliciano acquiesced to the dual jury procedure as an alternative to severance.
In reviewing Feliciano's claim on appeal that he was entitled to a severance, we are required to consider the entire record, including, retrospectively, the full trial record (People v Cardwell, 78 NY2d 996, 998 [1991]). Feliciano must demonstrate that he was unduly prejudiced by the severance and that a joint trial "substantially impair[ed defendant's] defense" (People v Mahboubian, 74 NY2d 174, 184 [1989]). "[T]he level of prejudice required to override the strong public policy favoring joinder" exists "where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt" (id.). A trial before dual juries, which constitutes a modified form of severance, is to be used sparingly and is evaluated under standards for reviewing severance motions generally, as set forth above (People v Warren, 20 NY3d 393, 397 [2013]).
Based on a retrospective review of the full trial record (Cardwell, 78 NY2d at 998), the court should have severed Feliciano's trial from that of his codefendant, Roberts, rather than conducting a joint trial before separate juries. In order to establish that both defendants participated in the crimes, the People were necessarily required to establish that both defendants were present. However, Roberts' cross examinations, mostly presented to both juries, undermined Feliciano's defense, that he was merely present with Roberts and did not share Roberts' intent to commit robbery or murder, which was antagonistic to, and irreconcilable with, Roberts' defense that he was not there at all. Feliciano's jury simply "could not have credited both defenses" (People v Figueroa, 193 AD2d 452, 454 [1st Dept 1993][citing Mahboubian, 74 NY2d at 185]).
Notably, Noel Mota, the People's witness, testified that he was the boyfriend of Feliciano's stepdaughter, Stephanie Rivera, who both lived with Feliciano. On the night in question, he observed Feliciano, Roberts and the victim casually hanging out in Feliciano's [*3]apartment. He testified that Feliciano, Rivera and the victim left to get money from the victim's apartment. While they were gone, Roberts received a phone call, said that he would "be over there right now" and then left. After some time, Rivera came back and was followed a few minutes later by Feliciano and Roberts. According to Mota, Feliciano was visibly shaking, upset and red faced, while Roberts appeared calm. Mota testified that when Feliciano and Roberts arrived, Feliciano's clothes appeared to be blood spattered and that they both took off their clothes and placed them in a bag. Mota further heard Feliciano ask Roberts why he had to "kill the guy." On cross examination, Roberts' counsel attacked this testimony and Mota's credibility. He repeatedly asked whether Mota was fabricating his testimony to protect Feliciano, directly asked whether it was Mota who was with Feliciano and who committed the murder, supporting his theory that Roberts was not present, and suggested that Mota had a motive to commit the murder because the victim was acting inappropriately towards his girlfriend, Rivera.
Mariano Figueroa, Feliciano's cousin, testified that Roberts gave him a gun, which he later sold to a confidential informant. The bullet casings found at the victim's apartment matched that gun, supporting the theory that Roberts participated in the crime. Roberts' counsel again used much of the cross examination to attempt to tarnish this witness's credibility by highlighting his criminal record and suggesting that his testimony was fabricated to protect Feliciano and frame Roberts.
Jonathan Kui, a criminalist with the Office of the Chief Medical Examiner, testified that Feliciano's DNA was uncovered at the scene. Roberts' counsel's cross examination highlighted the lack of Roberts' DNA at the scene and questioned whether Mota's DNA was profiled against the DNA recovered, again suggesting that he could have been the individual with Feliciano that night. Special Agent Wendell Cosenza reviewed cellular phone records and testified as to the location of Feliciano's and Roberts' phones on the night in question. Roberts' cross examination highlighted that the data did not place Roberts' phone at the scene that night.
Additionally, as a result of the dual jury trial, Feliciano's jury had access to a written statement made by Rivera, which was admitted during Roberts' counsel's cross examination of Rivera, in the absence of Feliciano's jury, and therefore was not part of the case against Feliciano. The statement, which the prosecutor projected on a screen and quoted from during summation, and which was part of the only exhibit that Feliciano's jury reviewed during deliberations, contained language that cast Feliciano in a negative light and, significantly, stated that Feliciano told Rivera that "you better not say[] nothing" and instructed her to "[a]ct like nothing happened."
The foregoing testimony and evidence was unsolicited by the People and would never have been presented to Feliciano's jury, but for Roberts' cross examination. Roberts' counsel's pursuit of his client's defense, contemporaneously undermined Feliciano's. Accordingly, he effectively became a "second prosecutor" and was able to impeach the foregoing witnesses to Feliciano's detriment in a manner that the People were unable to. Under these circumstances, a dual jury trial was improper as it did not prevent Feliciano from being prejudiced by Roberts' antagonistic defense (see Cardwell,78 NY2d at 998). A severance should have been granted (id.).
We do not find that the error was harmless (see People v Crimmins, 36 NY2d 230, 241 [1975]). The People presented a strong circumstantial case that Feliciano acted in concert in a robbery, and thus was guilty of felony murder. However, where so much turned on the jury's assessment of the credibility of Feliciano's testimony that he did not share the shooter's intent to [*4]commit a robbery, there is a reasonable possibility that the outcome of a separate trial against Feliciano would have differed from that of the two-jury trial he actually had. Accordingly, Feliciano is entitled to a new trial.
In light of this determination, we find it unnecessary to reach defendant's remaining contentions.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 1, 2020