People v Clark (2021 NY Slip Op 03192)





People v Clark


2021 NY Slip Op 03192


Decided on May 19, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
ROBERT J. MILLER
HECTOR D. LASALLE
BETSY BARROS, JJ.


2016-00770
 (Ind. No. 2159/12)

[*1]The People of the State of New York, respondent,
v
Hakeem Clark, appellant.


Paul Skip Laisure, New York, NY (Sean H. Murray of counsel), for appellant, and appellant pro se.
Melinda Katz, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Ellen C. Abbot, Brooke E. Barnes, and Katherine A. Triffon of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Joel L. Blumenfeld, J.), rendered November 23, 2015, convicting him of kidnapping in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Arthur J. Cooperman, J.H.O.; Steven W. Paynter, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials, and to controvert a search warrant and suppress physical evidence seized in the execution thereof.
ORDERED that the judgment is affirmed.
The defendant allegedly acted in concert with his codefendant to kidnap the complainant. Numerous ransom calls were made to the complainant's friends, one of whom informed the police that he recognized the voice of one of the callers as belonging to the defendant. The calls were traced to a two-family house owned by the defendant's cousin, a New York City Police Department (hereinafter NYPD) detective. The defendant resided with his cousin in the second floor apartment of the house, while tenants lived on the first floor, and the defendant's brother resided in the basement apartment.
Upon arriving at the subject house, the police found the complainant tied up inside the garage. When the complainant informed the police that the kidnappers were inside the house, the police knocked on the interior front doors. The interior door leading to the second floor apartment was opened by the defendant's cousin. After the defendant's cousin identified himself as a police officer and confirmed that there were others present inside, the police entered that part of the house where the defendant resided with his cousin. Upon entering, the police discovered and arrested the codefendant and another male. They also seized two cell phones which had been used to make the ransom calls.
The defendant, who had been observed walking away from the subject house and matched the physical description provided, was approached by the police and, after identifying himself, was arrested and transported to the police station. Thereafter, the police obtained and [*2]executed a search warrant for the house, and recovered, inter alia, a credit card bearing the complainant's name and the defendant's benefits card from a second floor bedroom, and identity theft equipment from the basement. At the police station, the defendant waived his Miranda rights (see Miranda v Arizona, 384 US 436) and gave a statement, the substance of which was largely exculpatory.
The defendant moved, inter alia, to suppress physical evidence and his statement to law enforcement officials, and to controvert the search warrant and suppress physical evidence seized in the execution thereof, contending that the police entry into the house was unlawful and that his statement was involuntary. Following a hearing, the Supreme Court denied those branches of the defendant's omnibus motion. The defendant was ultimately convicted, after a jury trial, of kidnapping in the first degree.
"[T]he police may lawfully conduct a warrantless search when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over the premises or personal property in question" (People v Cosme, 48 NY2d 286, 290; see People v Xochimitl, 147 AD3d 793, 794, affd 32 NY3d 1026; People v Watson, 101 AD3d 913, 914). "Where a person with ostensible authority consents to police presence on the premises, either explicitly or tacitly, the right to be secure against warrantless arrests in private premises as expressed in Payton v New York (445 US 573) is not violated" (People v Russo, 243 AD2d 658, 659; see People v Bunce, 141 AD3d 536, 537; People v Read, 74 AD3d 1245, 1246). "[C]onsent can be established by conduct as well as words" (People v Gonzalez, 222 AD2d 453, 453; see People v Bunce, 141 AD3d at 537).
Here, the People met their burden of establishing that consent to the warrantless search of the subject house was given by the defendant's cousin, a person who possessed the requisite degree of authority and control over the premises (see People v Clark, 167 AD3d 1035, 1036; People v Xochimitl, 147 AD3d 793; People v Nelson, 292 AD2d 397). The defendant's cousin, who immediately identified himself as a member of the NYPD upon answering the door leading to the area of the house where he and the defendant resided, effectively consented to the officers' entry and presence in the residence by failing to ask them to leave or otherwise indicating that they did not have his permission to remain (see People v Bunce, 141 AD3d at 537; People v Gonzalez, 222 AD2d 453; People v Schof, 136 AD2d 578, 579). Moreover, the defendant's cousin testified during the hearing that he was cooperating with the police, that his intent was to help the police if he could, and that, upon being asked if there were others in the house, he told the police officers that there were.
The defendant failed to preserve for appellate review his specific contention that the police entry into the foyer of the subject house was unlawful (see CPL 470.05[2]). In any event, this contention is without merit given the hearing testimony of the defendant's cousin (see Matter of Leroy M., 16 NY3d 243, 246; People v Priest, 227 AD2d 574, 574-575).
Further, given the legal entry into the subject house, the seizure of the cell phones, which were in plain view, was lawful (see People v Velasquez, 110 AD3d 835, 835-836; see also 1 New York Search & Seizure § 4.03). Moreover, since the information provided in the application for the search warrant, which was obtained subsequent to the officers' initial entry into the house, justified the issuance of the warrant, the Supreme Court properly denied that branch of the defendant's omnibus motion which was to controvert the search warrant and suppress physical evidence seized in the execution thereof (see e.g. People v Harris, 62 NY2d 706, 707-708).
The defendant's contention that his statement should have been suppressed because it was coerced by false claims and false promises is without merit. "[N]ot all deception of a suspect is coercive" (People v Thomas, 22 NY3d 629, 642). Here, the record does not show "that the deception was so fundamentally unfair as to deny due process or that a promise or threat was made that could induce a false confession" (People v Tarsia, 50 NY2d 1, 11 [citations omitted]; see People v Grigoroff, 131 AD3d 541, 544; People v Gelin, 128 AD3d 717, 718-719; cf. People v Thomas, 22 [*3]NY3d at 642-643). Moreover, "generalized promises of leniency do not create a substantial risk that a defendant might falsely incriminate himself or herself" (People v Black, 172 AD3d 895, 896 [internal quotation marks omitted]). Here, statements by law enforcement officials during questioning that it would be beneficial if the defendant cooperated and that they would inform the District Attorney's Office of his cooperation, did not constitute a promise of leniency that created "a substantial risk that the defendant might falsely incriminate himself," which would render his statement involuntary (CPL 60.45[2][b][i]; see People v Justiniano, 186 AD3d 1257, 1258; People v Black, 172 AD3d at 896; People v Plass, 160 AD3d 771, 773).
The Supreme Court's jury charge regarding the voluntariness of the defendant's statement to law enforcement officials, which was in accordance with the language contained in the Criminal Jury Instructions in place at the time, was proper (see CJI2d [NY] Statements [Admissions, Confessions]—Traditional Involuntariness, Expanded Charge on Traditional Involuntariness; People v Grant, 170 AD3d 888, 889).
The defendant's contention, raised in his pro se supplemental brief, that the felony complaint was facially insufficient is unpreserved for appellate review since the defendant never challenged the sufficiency of the felony complaint at his arraignment or in a subsequent motion and, in any event, has been rendered academic, since the felony complaint was superseded by an indictment (see People v Barnette, 150 AD3d 1136, 1138). Further, the defendant failed to preserve for appellate review the contention, raised in his pro se supplemental brief, regarding the People's alleged failure to establish probable cause for his arrest (see CPL 470.05[2]). In any event, this contention is without merit since the defendant impermissibly relies on trial testimony, and did not move to reopen the pretrial hearing (see People v Parham, 74 AD3d 1237, 1238). In addition, the defendant's contention, raised in his pro se supplemental brief, that he was denied his right to testify before the grand jury is also unpreserved for appellate review (see CPL 190.50[5]), and, in any event, is not supported by the record.
In light of our determination, we need not address the defendant's remaining contentions.
AUSTIN, J.P., MILLER, LASALLE and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court