People v Grigoroff (2025 NY Slip Op 07400)

People v Grigoroff

2025 NY Slip Op 07400

Decided on December 31, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 31, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
WILLIAM G. FORD
LAURENCE L. LOVE
JAMES P. MCCORMACK, JJ.

2017-11040
 (Ind. No. 23/09)

[*1]The People of the State of New York, respondent,
vAnthony Grigoroff, appellant.

Barket Epstein Kearon Aldea & Loturco, LLP, Garden City, NY (Donna Aldea and Danielle Muscatello of counsel), for appellant.
Robert V. Tendy, District Attorney, Carmel, NY (New York Prosecutors Training Institute [Bridget Rahilly Steller], of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Putnam County (Edward T. McLoughlin, J.), rendered September 26, 2017, convicting him of murder in the second degree and attempted burglary in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the County Court, Putnam County, for a new trial.
On December 31, 2008, the victim in this case was found dead outside of the Garrison Garage (hereinafter the garage) on Route 9 in Putnam County. On May 1, 2009, the then 18-year-old defendant was removed from the Putnam County Jail where he was serving a six-month sentence for a misdemeanor and brought to the Sheriff's Office, where, over the course of a 12-hour interrogation, the defendant was interviewed by multiple teams of police investigators, and gave statements to the police concerning the homicide at issue in this case. Those statements indicated that the defendant, his identical twin brother, and an individual named Byron Mountain entered a parking lot outside of the garage and parked their vehicle there with the intention of burglarizing an office located on the premises. The defendant remained in the vehicle for 5 to 10 minutes while his brother served as a lookout. Mountain was in the process of walking around the exterior of the garage when an individual arrived in a tow truck and confronted Mountain. Mountain produced a gun from his waistband and shot the individual, who later died. On June 9, 2009, the defendant was arrested and charged with, inter alia, murder in the second degree. Neither Mountain nor the defendant's brother was charged with any crime relating to this incident.
Following a jury trial in 2010 (hereinafter the first trial), the defendant was convicted of, among other things, one count of murder in the second degree and two counts of attempted burglary in the second degree. On appeal, this Court reversed the judgment of conviction and remitted the matter for a new trial based upon errors unrelated to the subject confession (see People v Grigoroff, 131 AD3d 541), although this Court declined to disturb the County Court's credibility determination concerning the defendant's motion to suppress the confession. However, this Court also noted that "the testimony of the law enforcement officials indicated that the police utilized [*2]deceptive techniques during the course of the defendant's interrogation" (id. at 544). Following a new jury trial, the defendant was convicted of one count of murder in the second degree and two counts of attempted burglary in the second degree.
The defendant contends that his conviction, which was based solely on his confession, was against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 644).
However, the judgment must be reversed and a new trial ordered because the County Court's rulings in connection with the testimony of the defendant's expert deprived the defendant of a fair trial. As in the first trial, the sole evidence linking the defendant with the crimes at issue was his confession, which he attempted to repudiate, arguing that promises made by the police rendered his statements involuntary by creating a substantial risk that the defendant might falsely incriminate himself. As the defendant's statements were the sole evidence against him, the substance of his expert's testimony was the crux of his defense. Significantly, in the first trial there was no expert testimony regarding the defendant's susceptibility to providing false confessions.
Here, the defendant retained an expert in the field of disputed confessions who conducted a psychological evaluation of the defendant and concluded that the defendant "is more vulnerable than the average person to falsely confessing." As it relates to the defendant's expert, the defendant contends that the County Court improvidently exercised its discretion in limiting the scope of the expert's testimony as to existing research on false confessions, denying admission of a portion of that expert's curriculum vitae, and directing that trial should commence in July 2017, when the People's expert was available, but the defendant's expert was unavailable for an in-person appearance at trial and thus was examined conditionally, which examination was video recorded and played for the jury.
"The admissibility and limits of the expert's testimony lie primarily in the sound discretion of the trial judge" (People v Powell, 37 NY3d 476, 479). Proposed expert psychological testimony on the subject of false confessions must be "relevant to the defendant and interrogation before the court" (People v Bedessie, 19 NY3d 147, 161).
By order dated May 5, 2017 (hereinafter the May 2017 order), the County Court ruled, after a hearing, that the defendant's expert would be permitted to offer expert testimony regarding (1) the research on the issue of false confessions in order to educate jurors on the subject; (2) the principles and methodologies that are generally accepted within the relevant scientific community in the area of false confessions; (3) the tests and procedures that are generally accepted by the relevant scientific community that the defendant's expert followed in evaluating the defendant; (4) the circumstances of the interrogation and tactics used by law enforcement in the case; and (5) the results of the expert's evaluation of the defendant. Following the May 2017 order, the case was transferred to a different judge. Notwithstanding the May 2017 order, the court limited the scope of the defendant's expert's testimony by precluding the mention of a study by the Innocence Project, which found that of the more than 300 people who had been, at the time, exonerated by DNA, approximately 25% of those people had confessed, and a study conducted at the University of Michigan Law School, where researchers found that of the 1,405 exonerations that took place between 1989 and 2012, 10% of the people had falsely confessed, and people with mental illness or intellectual disability were overrepresented in those who had done so. Here, the court improperly concluded that those studies were not relevant to the defendant and the interrogation before the court, as this case did not involve DNA evidence and a study related to those with mental illness or intellectual disability was not germane.
Contrary to the County Court's conclusion, the studies were relevant to illustrate the risk of false confessions, and specifically, a study related to mental disability is proper in this case [*3]where the defendant was found to have an IQ lower then 93% of individuals in his age group. Thus, the court limited the scope of the expert's testimony as to existing research on false confessions where that expert had previously testified that he could not effectively offer an opinion about the defendant's psychological vulnerabilities to falsely confessing, occasioned by his low IQ, antisocial behavior, and history, without discussing the relevant science and research that had been done in the area over the last 10 to 15 years. The court further compounded this error by denying admission of a portion of the defendant's expert's curriculum vitae, ruling, without basis, that the titles of certain articles listed therein would be inappropriate for a jury to see, thereby depriving the jury of information relevant to the credibility and weight of the expert's testimony (see Doviak v Finkelstein & Partners, LLP, 137 AD3d 843, 847). Moreover, these errors allowed the People's expert to testify that research in the area of false confessions is scant and that the study of false confessions and the evaluation of psychological vulnerabilities was a "primitive subdiscipline." In addition to the above errors, the court also scheduled the trial on a date that the defendant's expert was not available. Although the use of video recorded testimony is not error, "[l]ive televised testimony is certainly not the equivalent of in-person testimony" (People v Wrotten, 14 NY3d 33, 40). As such, the jury was able to observe the in-court testimony of the People's expert, but was only able to observe the defendant's expert on a television screen, and even that testimony was edited to exclude the aforementioned studies. While these errors viewed individually may be insufficient to warrant a new trial, viewed together, where, as here, the sole evidence is the defendant's confession and the crux of the defense was the testimony of an expert in false confessions who asserted that the defendant was intellectually and psychologically predisposed to make a false confession, the errors had the cumulative effect of depriving the defendant of his due process right to a fair trial (see People v Mattocks, 100 AD3d 930, 931; People v Engstrom, 86 AD3d 580, 581; People v Andre, 185 AD2d 276, 277-278). Accordingly, reversal is required and the matter must be remitted to the County Court, Putnam County, for a new trial.
Since there must be a new trial, we note that it was error for the County Court to not charge the section of the jury instructions entitled "Promise by the Police" (see CJI2d[NY] Statements [Admissions, Confessions]—Promise by the Police, https://www.nycourts.gov/judges/cji/1-General/CJI2d.Confession.pdf [last accessed Dec. 9, 2025]; CPL 60.45[2][b][i]). "When determining whether to give a charge on a claimed defense, the trial court must view the evidence in the light most favorable to the defendant. Upon defendant's request, the court must instruct the jury on the defense if it is sufficiently supported by the evidence; failure to do so may constitute reversible error" (People v Butts, 72 NY2d 746, 750). When properly raised at trial, the voluntariness of a defendant's statement to law enforcement must be submitted to the jury upon the defendant's request (see People v Huntley, 15 NY2d 72). Here, the defendant testified as to the circumstances surrounding his 12-hour interrogation, including repeated testimony regarding the alleged promises that the police made to the defendant.
Additionally, we note that the defendant's contention that the County Court erred in admitting the hearsay statement of the defendant's high school principal about the defendant's character is without merit. Here, the principal's hearsay statement was admitted not for its truth value, but so that the jury could understand each expert's methodology and practice in reaching their respective conclusions about whether the defendant had falsely confessed (see Matter of State of New York v Floyd Y., 22 NY3d 95, 107). The principal's statement was reliable and relevant, and its probative value outweighed its prejudicial effect (see id. at 109).
The defendant's challenge to certain statements made by the prosecutor during summation is partially unpreserved for appellate review (see CPL 470.05[2]). In any event, the prosecutor's statements during summation constituted fair comment on the evidence and the inferences to be drawn therefrom (see People v Fuhrtz, 115 AD3d 760; People v Birot, 99 AD3d 933; People v Guevara-Carrero, 92 AD3d 693; People v McHarris, 297 AD2d 824, 825) or were fair response to defense counsel's comments during summation (see People v Adamo, 309 AD2d 808; People v Clark, 222 AD2d 446; People v Vaughn, 209 AD2d 459), and any impropriety in the statements was "not so flagrant or pervasive as to deny the defendant a fair trial" (People v Almonte, 23 AD3d 392, 394; see People v Svanberg, 293 AD2d 555).
In light of our determination, we need not reach the defendant's remaining contention.
DILLON, J.P., FORD, LOVE and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court